**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARK OLSZEWSKI, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT  1:18-cv-02050 |
| NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING, | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

NOW COMES the Plaintiff, MARK OLSZEWSKI ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("Shellpoint"), as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action seeking actual, statutory, punitive damages, attorney's fees and costs for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. 1692 *et seq.,* the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §524, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

**JURISDICTION AND VENUE**

2.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1334, and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

1

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Shellpoint conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

4.   Plaintiff is a consumer and a natural person over 18-years-of-age who previously owned the property located at 3455 West Berteau Avenue, Unit 3C, Chicago, Illinois 606018 ("subject property").

5.   Shellpoint is a Delaware corporation with its principal place of business located at 4000 Chemical Road, Suite 200, Plymouth Meeting, Pennsylvania 19462 and its registered agent is Illinois Corporation Service C located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Shellpoint is a foreign company whose primary business is the collection of debts owed to others and servicing loans across the country, including the State of Illinois.

6.   Shellpoint qualifies as a "debt collector" because the principal purpose of its business is to collect debts, and because it regularly collects or attempts to collect debts owed to another party.

## FACTS SUPPORTING CAUSE OF ACTION

### Plaintiff's Chapter 13 Bankruptcy

7.   In March 2007, Plaintiff executed a mortgage and note in the amount of $198,000.00 in favor of A & N Mortgage Services, Inc., secured by the subject property.

8.   At the closing for the subject property, Plaintiff signed a Notice of Assignment, Sale or Transfer of Servicing Rights transferring servicing rights to CitiMortgage effective on May 1, 2007.

9.    On December 12, 2012, Plaintiff refinanced and executed a mortgage and note in the amount of $184,850.00 ("subject loan" or "subject debt") in favor of CitiMortgage secured by the subject property.

10. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to CitiMortgage, in the amount of $177,208.00, secured by the subject property.

11. On May 22, 2015, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-18200 ("bankruptcy").

12. Also on May 22, 2015, Plaintiff filed his Chapter 13 Plan.

13. Plaintiff's Chapter 13 Plan proposed to treat CitMortgage's claim as follows:

> "Debtor is surrendering the real property located at 3435 W. Berteau Avenue, Unit 3C, Chicago, Illinois to CitiMortgage, Inc. in full satisfaction of its claims."

14. On May 29, 2015, by virtue of listing CitiMortgage as a creditor, the Bankruptcy Noticing Center ("BNC") served CitiMortgage with notice of Plaintiff's bankruptcy filing and Plaintiff's Chapter 13 Plan.

15. CitiMortgage did not file any objection to Plaintiff's Chapter 13 Plan.

16. On June 19, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative of CitiMortgage appeared at the 341 Meeting of Creditors.

17. On September 2, 2015, the Chapter 13 Plan was confirmed by the Honorable Judge Jack B. Schmetterer.

18. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

19. On January 22, 2016, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

20. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or

otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor…"

21. On January 24, 2016 the BNC served CitiMortgage with the Order of Discharge.

22. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by CitiMortgage or any other party.

23. On January 25, 2016, Plaintiff's bankruptcy case closed and the Trustee was discharged.

24. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus terminating the business relationship with CitiMortgage and any of its successors and assigns.

25. Subsequent to Plaintiff's bankruptcy discharge, Ditech Financial, LLC ("Ditech") acquired the servicing rights to the subject debt.

26. On or around January 23, 2018, nearly two years after Plaintiff received his bankruptcy discharge, Shellpoint acquired the subject loan from Ditech. [1]

27. Shellpoint knew that the subject debt was discharged in Plaintiff's bankruptcy on January 22, 2016. [2]

### Shellpoint's Collection Efforts after Plaintiff's Bankruptcy Discharge

28. After Plaintiff's bankruptcy was discharged, Shellpoint initiated an unlawful collection campaign against Plaintiff, attempting to collect the discharged subject debt.

---

[1] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to CitiMortgage or any of its successors and assigns, including Ditech and Shellpoint, as Plaintiff's Confirmed Plan surrenders the subject property to CitiMortgage in full satisfaction of its claims.

[2] Plaintiff's bankruptcy is easily accessible as it is public record. Upon information and belief, Shellpoint's loan boarding documents will reveal that Shellpoint had actual knowledge of Plaintiff's Chapter 13 bankruptcy filing and subsequent discharge.

29. Notwithstanding the fact that the subject debt was discharged by virtue of Plaintiff's bankruptcy discharge, Shellpoint harassed Plaintiff by calling his cellular phone, attempting to collect the subject debt.

30. Moreover, between December 27, 2017 and the present day, Shellpoint placed no less than 21 phone calls to Plaintiff's cellular phone ending in 5201, including, but not limited to, the following dates and times:[3]

- December 27, 2017 at 5:16 p.m., from telephone number (832)-612-5856;
- January 10, 2018 at 1:29 p.m., from telephone number (832)-612-5797;
- January 12, 2018 at 5:30 p.m., from telephone number (866)-825-2174;
- January 23, 2018 at 8:13 p.m., from telephone number (866)-825-2174;
- January 23, 2018 at 8:27 p.m., from telephone number (866)-825-2174;
- January 26, 2018 at 4:55 p.m., from telephone number (866)-825-2174;
- February 2, 2018 at 4:36 p.m., from telephone number (866)-825-2174;
- February 6, 2018 at 7:20 p.m., from telephone number (866)-825-2174;
- February 7, 2018 at 1:22 p.m., from telephone number (832)-775-7577;
- February 9, 2018 at 6:17 p.m., from telephone number (866)-825-2174;
- February 13, 2018 at 7:31 p.m., from telephone number (864)-312-4600;
- February 16, 2018 at 7:27 p.m., from telephone number (866)-825-2174;
- February 20, 2018 at 1:14 p.m., from telephone number (832)-612-5856;
- February 21, 2018 at 7:27 p.m., from telephone number (866)-825-2174;
- February 22, 2018 at 8:05 p.m., from telephone number (866)-825-2174;
- February 23, 2018 at 6:51 p.m., from telephone number (864)-312-4600;
- March 7, 2018 at 2:29 p.m., from telephone number (832)-612-5797;
- March 8, 2018 at 4:05 p.m., from telephone number (866)-825-2174;
- March 9, 2018 at 4:23 p.m., from telephone number (864)-312-4600;
- March 12, 2018 at 5:52 p.m., from telephone number (866)-825-2174; and
- March 14, 2018 at 6:32 p.m., from telephone number (864)-312-4600.

---

[3] The list of calls is not exhaustive. The list includes the phone calls that were documented by Plaintiff.

31. Plaintiff revoked consent to be contacted on his cellular phone by virtue of the bankruptcy filing.

32. In the calls that Plaintiff did answer, there would be an approximate 3 second pause between the time he said "hello," and the time that a live agent introduced them self as a representative from Shellpoint attempting to collect on the subject debt.

33. Upon information, belief, and in light of the frequency of the calls, Shellpoint utilized an ATDS, as defined by 47 U.S.C. §227(a)(1), to place the unwanted calls to Plaintiff's cellular phone.

34. The telephone number ending in 5201 that Shellpoint called was assigned to cellular services for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

35. The calls Shellpoint placed to Plaintiff's cellular phone were not placed for emergency purposes pursuant to 47 U.S.C. §227(b)(1)(A)(i).

### DAMAGES

36. Concerned about the violations of his rights and protections, Plaintiff sought the assistance of counsel to ensure that Shellpoint's collection efforts cease.

37. Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of Shellpoint's unlawful collection practices.

38. Shellpoint's harassing collection practices have severely disrupted Plaintiff's daily life and general well-being.

39. Shellpoint's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, physical harm, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, increased risk of personal injury due to the distraction caused by the phone calls, diminished value and utility of his

telephone equipment and telephone subscription services, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

40. Moreover, Plaintiff was deceived into believing that his bankruptcy filing had no legal effect and that he would have to pay the subject debt in order to get Shellpoint's collection activities to stop.

41. Shellpoint's harassing phone calls and statements demanding payment have severely disrupted Plaintiff's daily life.

42. Plaintiff was unduly inconvenienced and harassed by Shellpoint's unlawful attempts to collect a debt that was no longer owed by virtue of Plaintiff's bankruptcy discharge.

43. Plaintiff has been forced to retain counsel to end Shellpoint's unlawful collection activities and has incurred expenses in the form of legal fees and costs.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

44. Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

46. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

47. Shellpoint is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts allegedly owed to a third party.

48. Moreover, Shellpoint is a "debt collector" because it acquired rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

49. Section 524(a)(2)-(3) of the Bankruptcy Code, commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

50. Shellpoint violated 15 U.S.C. §§1692c(a)(2), d(5), e, e(2), e(10), f, and f(1) through its debt collection efforts on a debt discharged in bankruptcy.

### a. Violations of FDCPA §1692c

51. Shellpoint violated §1692c(a)(2) by attempting to collect on the discharged subject debt after it knew that Plaintiff was represented by counsel.

### b. Violations of FDCPA §1692d

52. Shellpoint violated §1692d(5) by engaging in abusive, harassing, and oppressive conduct by calling Plaintiff's cellular phone seeking to collect the discharged subject debt. Moreover, Defendant continued placing the calls with knowledge that the subject debt was uncollectible by virtue of the discharge injunction. Specifically, Shellpoint caused Plaintiff's cellular phone to ring repeatedly in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff. Shellpoint placed or caused to be placed no less than 21 harassing phone calls to Plaintiff's cellular phone using an ATDS without his consent.

### c.  Violations of FDCPA §1692e

53. Shellpoint violated §1692e by making false representations in its attempts to collect the subject debt as the subject debt was not owed at the times Shellpoint made demands on the subject debt.

54. Shellpoint violated §1692e(2) when it misrepresented the character, amount, or legal status of the subject debt. The subject debt was not owed at the times Shellpoint demanded payment because it was discharged in Plaintiff's bankruptcy.

55. Shellpoint violated §1692e(10) when it falsely represented that the subject debt was collectible at the times of the demands as the subject debt was not owed by virtue of Plaintiff's bankruptcy discharge.

### d.  Violations of FDCPA §1692f

56. Shellpoint violated §1692f by employing unfair and unconscionable means to collect the subject debt by sending a barrage of dunning letters attempting to collect the subject debt which was discharged in Plaintiff's bankruptcy and not owed.

57. Shellpoint violated §1692f(1) by attempting to collect a debt that was uncollectible as a matter of law as the discharge injunction precludes collection of any discharged debt.

58. Shellpoint attempted to dragoon and induce Plaintiff into paying a debt that was not legally owed.

59. As an experienced creditor and debt collector, Shellpoint knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

60. Shellpoint knew or should have known that Plaintiff's discharged debt was uncollectable as a matter of law.

9

61. Upon information and belief, Shellpoint has no system in place to identify and cease collection of debts discharged in bankruptcy.

WHEREFORE, Plaintiff, MARK OLSZEWSKI, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b. awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

d. awarding any other relief this Honorable Court deems just and appropriate.

### COUNT II -- VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

62. Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

63. Shellpoint placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

64. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

65. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

66. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

67. Upon information and belief, the predictive dialing system employed by Shellpoint transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

68. Shellpoint violated the TCPA by placing no less than 21 calls between December 2017 through the present day to Plaintiff's cellular phone, using an ATDS. Moreover, Plaintiff's bankruptcy discharge forbade Shellpoint from engaging in collection activity against Plaintiff in connection with the subject debt

69. As pled above, Plaintiff was severely harmed by Shellpoint's collection calls to his cellular phone.

70. Upon information and belief, Shellpoint has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

71. Upon information and belief, Shellpoint knew its collection techniques were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

72. Shellpoint, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

73.   Pursuant to 47 U.S.C. §227(b)(3)(B), Shellpoint is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Shellpoint's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff, MARK OLSZEWSKI, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  awarding Plaintiff damages of at least $500 per phone call to be demonstrated at trial, for the underlying TCPA violations pursuant to 47 U.S.C. §227(b)(3)(B);

c.  awarding Plaintiff treble damages pursuant to 47 U.S.C. §227(b)(3)(C); and

d.  awarding any other relief this Honorable Court deems just and appropriate.

### COUNT III -- VIOLATIONS OF THE DISCHARGE INJUNCTION

74.     Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

**a.  Section 11 U.S.C. §524(a)(2)**

75.    Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

76.    "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

77.    Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

78.    Furthermore, "[c]orporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent." *Id.* at 230.

12

**b. Placing calls to Plaintiff's cellular phone for collection of the discharged subject debt**

79. Notwithstanding having knowledge of the discharged status of the subject debt, Shellpoint continued to place calls to Plaintiff's cellular phone demanding payment of the subject debt.

80. Shellpoint placed no less than 21 calls to Plaintiff's cellular phone demanding payment of the subject debt, in direct violation of the discharge injunction.

**c. Shellpoint's conduct was perpetual, willful, and wanton**

81. Shellpoint had actual knowledge of the bankruptcy filing and discharge injunction.

82. Despite having actual knowledge of the discharge injunction, Shellpoint committed multiple egregious violations of the discharge injunction by failing to cease collection efforts as evidenced by the harassing phone calls Shellpoint placed to Plaintiff's cellular phone.

83. Based on the broad language of the Bankruptcy Code, Shellpoint willfully and perpetually sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

84. Plaintiff is entitled to actual damages, attorney's fees, and costs for Shellpoint's willful violations of the discharge injunction. Plaintiff is also entitled to punitive damages for Shellpoint's arrogant defiance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter Shellpoint from future misconduct.

WHEREFORE, Plaintiff MARK OLSZEWSKI requests that this Honorable Court:

a.  Hold Shellpoint in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b.  Order Shellpoint to pay Plaintiff for his actual damages as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c.  Order Shellpoint to pay punitive damages for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d.  Order Shellpoint to pay Plaintiff her reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e.  Provide such other and further relief as the Court may deem just and proper.

### COUNT IV -- VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

85.  Plaintiff restates and reallages paragraphs 1 through 43 as through fully set forth herein.

86.  Plaintiff is a "person" as defined in ICFA, 815 ILCS 505/1(c).

87.  Plaintiff is a "consumer" as defined in ICFA, 815 ILCS 505/1(e).

88.  Shellpoint is engaged in commerce in the State of Illinois with regard to Plaintiff and the subject debt. Shellpoint specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in its regular course of business. *See* 815 ILCS 505/1(f).

89.  ICFA broadly prohibits unfair and deceptive acts and business practices:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether

14

any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

### a. Deception and Unfairness

90.     Shellpoint's demands for payment on the subject debt, which was duly scheduled, and ultimately discharged, in Plaintiff's bankruptcy, represents the use of false pretenses and deception to attempt to collect a debt that was not owed at the time the demands for payment were made.

91.     It was unfair for Shellpoint to seek to collect the subject debt from Plaintiff through continuous phone calls to Plaintiff's cellular phone.

92.     Shellpoint intended that Plaintiff rely on its unfair and deceptive acts and Plaintiff did in fact rely on Shellpoint's deceptive and unfair acts to his detriment as he was led to believe that his bankruptcy had no legal effect and was forced to retain counsel as a result of Shellpoint's misrepresentations.

93.     Shellpoint bullied Plaintiff into near submission with perpetual unfair and deceptive conduct through lies, harassment, intimidation, and deception regarding the collectability of the subject debt.

94.     It was unfair for Shellpoint to continue to contact Plaintiff after the subject debt was discharged in Plaintiff's bankruptcy.

95.     As pled above, Plaintiff was harmed by Shellpoint's conduct.

96.     An award of punitive damages is appropriate because Shellpoint's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the continuous phone calls.

WHEREFORE, Plaintiff MARK OLSZEWSKI respectfully requests that this Honorable Court

enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statute;

b. awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying ICFA violations;

c. awarding Plaintiff punitive and actual damages pursuant to 815 ILCS 505/10a; and

d. awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: March 21, 2018                                    Respectfully submitted,

s/ Marwan R. Daher                                       s/Omar T. Sulaiman
Marwan R. Daher, Esq.                                    Omar T. Sulaiman, Esq.
Counsel for Plaintiff                                    Counsel for Plaintiff
Sulaiman Law Group, Ltd.                                 Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200                    2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148                                  Lombard, Illinois 60148
(630) 575-8181 x109 (phone)                              (630) 575-8181 x108 (phone)
(630) 575-8188 (fax)                                     (630) 575-8188 (fax)
mdaher@sulaimanlaw.com                                   osulaiman@sulaimanlaw.com